IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ELVIRA DAVISON,                          )
                                         )    No. 72463-1-I
                Respondent,              )
                                         )    DIVISION ONE
        v.                               )
                                         )
STATE OF WASHINGTON                      )    UNPUBLISHED OPINION
DEPARTMENT OF EMPLOYMENT                 )
SECURITY,                                )    FILED: August 31, 2015
                                         )
                Appellant.               )
_____)

BECKER, J. — The State of Washington appeals an order reversing an

Employment Security Department decision to deny Elvira Davison unemployment

benefits. Because the superior court failed to view the administrative decision

with appropriate deference, we reverse.

A decision by the commissioner of the Employment Security Department

is reviewed under the Washington Administrative Procedure Act, chapter 34.05

RCW. This court applies the act's standards directly to the administrative record.

We will reverse an administrative decision if it is (1) based on an error of law,

(2) not based on substantial evidence, or (3) arbitrary or capricious. Tapper v.

State Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

In August 2013, the Department denied Davison's application for

unemployment benefits. Davison appealed. An administrative law judge held a

hearing on the appeal in September 2013 and denied Davison relief. Davison

then petitioned the commissioner of the Department for further review. The

commissioner affirmed and adopted the findings of fact and conclusions of law of the administrative law judge, including the conclusion that the evidence and testimony of the employer was "more logically persuasive than the claimant's."

According to testimony at the hearing before the administrative law judge, Davison worked as a part-time social worker for a law firm of public defenders between December 2009 and May 2013. In November 2012, Trudy Elliott, a firm employee who also served as a court appointed guardian to one of the firm's clients, asked Davison for help. Elliott told Davison that the client, a minor, had a bank account listing Elliott as the primary account holder. Elliott said she was moving to Nevada and needed someone to take over the primary account holder responsibilities. Elliott asked Davison if she would act as the primary account holder until a new guardian was appointed. Davison agreed.

In May 2013, the client's newly appointed guardian told the firm that Davison had been withdrawing funds from the client's checking account without permission. The administrative record shows that Davison opened a joint account with the minor. It also shows that on five separate occasions between December 2012 and April 2013, Davison transferred money from the joint account to her own personal account. Davison was discharged for violating a firm policy requiring all client funds to be deposited in the firm's client trust account.

Davison testified that each withdrawal was made to assist the client and at the client's request. Davison explained that she would withdraw money from her personal account, give it to the client, and then transfer money from the joint

account to her personal account as a reimbursement. Davison claimed that she was unaware of the firm's trust account policy and was not given training on how to handle client funds. The firm, on the other hand, presented evidence that Davison received a copy of the trust account policy contained in an employee handbook when she was hired.

The commissioner found that Davison received a copy of the firm's trust account policy, concluded that Davison committed misconduct, and therefore affirmed the Department's decision to deny Davison benefits.

> The claimant's discharge precipitating conduct has been shown, by a preponderance of substantial and credible evidence of record, to have been in willful and wanton disregard of the rights, title and interests of her employer. RCW 50.04.294(1)(a). Specifically, said conduct was in violation of a reasonable employer policy, which policy was known to the claimant. RCW 50.04.294(2)(f). Misconduct, as that term is contemplated by RCW 50.20.066(1), has been established.

Davison petitioned the superior court for review. After finding the administrative record contained insufficient evidence to conclude that Davison received a copy of the firm's trust account policy, the superior court reversed. The court made its own findings and conclusions based on Davison's testimony. According to the superior court, Davison's conduct amounted to negligence, not misconduct.

> II. Some of the Commissioner's findings of fact are not supported by substantial evidence. The court finds: (1) that there was no evidence of training regarding trust account policies; (2) there was an obvious practice of employees handling the funds of clients, acting as guardians, etc.; (3) no one was harmed by Ms. Davison's handling of the client's funds for her; and (4) Ms. Davison is not an attorney, and was presented with an emergency when she was asked to open the joint account.

3

III. The Commissioner's conclusions of law constitute an error of law in violation of the Washington Administrative Procedure Act, as Ms. Davison exhibited negligence not likely to cause harm; nor did she exhibit intentional or substantial disregard of the employer's interests.

The Department appeals, claiming the superior court erred by failing to view the commissioner's findings with appropriate deference.

Under the Washington Administrative Procedure Act, agency findings of fact will be upheld if they are supported by evidence that is substantial when viewed against the record as a whole. Substantial evidence is evidence "in sufficient quantum to persuade a fair-minded person of the truth of the declared premises." William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wn. App. 403, 407, 411, 914 P.2d 750 (1996).

Davison attempts to escape the rigors of substantial evidence review by emphasizing redeeming facts she presented through her own testimony. She claims she is not asking this court to reweigh the evidence, rather she is asking this court to consider the record as a whole. Davison's misunderstanding of the standard of review is demonstrated by her assertion that uncontested "facts" are verities on appeal. Brief of Respondent at 7 n.1. Findings of fact are verities on appeal if they are uncontested, Tapper, 122 Wn.2d at 407, but factual testimony by a witness does not become a verity on appeal by virtue of being unrebutted.

It is undisputed that the employer had a policy requiring all client funds to be placed in a trust account. The key factual finding adopted by the commissioner reads as follows: "Claimant was given a copy of this policy when she was first hired."

4

Substantial evidence supports the commissioner's finding that Davison was given a copy of the policy. The firm's former human resource manager testified that she gave Davison a copy of the employee manual containing the trust account policy shortly after Davison was hired and witnessed Davison sign a checklist verifying that she received it. That checklist was submitted as evidence. In view of this testimony, the superior court's determination that the record contains insufficient evidence to prove that Davison received a copy of the policy cannot be sustained.

The Department contends that based upon the finding that Davison received a copy of the policy, the commissioner correctly concluded that Davison was discharged for misconduct.

RCW 50.04.294(2) identifies several acts of per se misconduct. These acts are considered misconduct per se because they "signify a willful or wanton disregard for the rights, title, and interests of the employer." RCW 50.04.294(2). It is misconduct per se to violate a company rule "if the rule is reasonable and if the claimant knew or should have known of the existence of the rule." RCW 50.04.294(2)(f). A regulation states that the department "will find that you knew or should have known about a company rule if . . . you were provided a copy or a summary of the rule in writing." WAC 192-150-210(5).

The commissioner concluded that Davison committed misconduct because the trust account policy was reasonable, Davison knew about it, and her failure to follow it "showed deliberate disregard" for her employer's interests.

According to Davison, her violation of the trust account policy was not willful. When determining whether an employee's actions were "willful," the focus is not on whether the employee intended to harm the employer. Rather, an employee "willfully" commits misconduct if she "deliberately or knowingly" violates a reasonable employment policy. WAC 192-150-205(1); Daniels v. Dep't of Emp't Sec., 168 Wn. App. 721, 728, 281 P.3d 310, review denied, 175 Wn.2d 1028 (2012).

The commissioner correctly concluded that Davison's violation was willful because the policy was known to her.

Davison contends the firm's trust account policy, which is predicated upon the Washington Rules of Professional Conduct, is unreasonable when applied to a nonlawyer like herself. We disagree.

A company policy is reasonable if it is related to an employee's job duties, a normal business requirement or practice for an occupation or industry, or is required by law or regulation. WAC 192-150-210(4). Davison worked as a social worker in a law office, a setting in which lawyers may be held accountable for the conduct of nonlawyer employees. RPC 5.3. It was reasonable for the firm to extend its trust account policies to all staff, not just lawyers. Davison emphasizes that she was not given training about why the rule was important, but the commissioner was not required to accept that as an excuse for not following the rule. The rule is simple and easy to understand without extensive explanation.

Davison contends the commissioner should have concluded that her conduct was the result of inadvertence or ordinary negligence, not disqualifying misconduct. By statute, "misconduct" does not include:

> (a) Inefficiency, unsatisfactory conduct, or failure to perform well as the result of inability or incapacity;
> (b) Inadvertence or ordinary negligence in isolated instances; or
> (c) Good faith errors in judgment or discretion.

RCW 50.04.294(3)(a)-(c).

Davison cites two cases in which the commissioner allowed a discharged employee to receive unemployment benefits despite the employee having failed to follow the employer's directions. The first is Kirby v. Employment Security Department, 179 Wn. App. 834, 320 P.3d 123, review denied, 181 Wn.2d 1004 (2014).

In Kirby, the employee failed to comply with the employer's unreasonable request because she was legitimately confused by a break in communication that the commissioner attributed to the employer. Kirby, 179 Wn. App. at 845-50. Davison, by contrast, failed to comply with a reasonable company rule, not an employer's unreasonable directions. Moreover, Davison does not claim she violated the policy because she was confused—she claims any violation was inadvertent because she had no knowledge of the policy or its requirements. As discussed above, however, that argument is foreclosed by the commissioner's factual finding that she did know of the policy. Moreover, Davison's violation was not an isolated instance of misconduct. She transferred the client's funds into her own account on five separate occasions over several months without seeking

advice about whether it was an acceptable way to handle a client's funds. Contrary to the superior court's finding, no emergency justified Davison's actions.

The second case is Albertson's, Inc. v. Employment Security Department, 102 Wn. App. 29, 15 P.3d (2000). In Albertson's, the grocer alleged that its former employee committed misconduct by purchasing out-of-date meat at a discounted price in violation of a company policy. The commissioner found that Albertson's written policies regarding out-of-date meat sales to employees "were at best unclear, and were inconsistent with company practice." Albertson's, 102 Wn. App. at 42. In the present case, the policy is clear. It provides: "Any time an . . . employee receives monies from a client or on behalf of a client, the funds must be deposited in the client trust account." It also states, "the Controller is to receive all client funds" and describes the firm's process for making deposits and withdrawals. And unlike in Albertson's, here the commissioner did not find an inconsistent company practice.

The judgment of the superior court is reversed, and the commissioner's ruling is reinstated. Because we reinstate the decision of the commissioner, Davison is not entitled to an award of attorney fees.

Reversed.

Becker, J.

WE CONCUR: